IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 15-00232-01-CR-W-HFS |
| SULIF I. WILKINS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress a loaded firearm seized from an automobile at the time of defendant's arrest on the grounds that (1) the automobile exception to the warrant requirement does not apply because it was parked, and (2) the plain view exception does not apply because the firearm was not discernable from outside the vehicle. I find that because the car was readily mobile and the police had probable cause to believe that evidence of a crime would be found in the car, the automobile exception to the warrant requirement exists and the firearm was lawfully seized. Therefore, defendant's motion to suppress should be denied.

*I.* ***BACKGROUND***

On June 17, 2015, officers attempted to arrest defendant on a pick-up order in connection with a homicide investigation and five outstanding arrest warrants.[1] Defendant walked from his apartment to his girlfriend's car and opened the driver's side

---

[1] There was no testimony regarding the arrest warrants; however, defendant does not challenge the legality of his arrest. The affidavit in support of the criminal complaint states that defendant had five outstanding arrest warrants, and defendant refers to those outstanding warrants as grounds for his arrest in his motion to suppress.

door.  Officers approached and told defendant to get on the ground.  He reached under his shirt and into his waistband and took out an object which Detective Huth recognized as a firearm.  When defendant saw additional officers arriving, he threw the object into the car, slammed the door closed, and ran toward the apartment.  Detective Huth recognized the object thrown into the car as a firearm.  Three officers were needed to subdue defendant and take him into custody.  Detective Huth went to the car and from outside the car saw the butt of the gun sticking out from under the driver's seat.  The firearm was retrieved.

On June 18, 2015, a criminal complaint was filed charging defendant with possessing a firearm after having been convicted of a felony.  On July 8, 2015, an indictment was returned charging one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possessing a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

Defendant filed the instant motion to suppress on March 10, 2016 (document number 39).  The government filed a response on March 15, 2016 (document number 40), arguing that (1) defendant has no standing to challenge the search of the car since it was not his, (2) defendant abandoned the car when he ran toward the apartment, (3) the firearm was discovered in plain view, and (4) the automobile exception to the warrant requirement applies.

On March 23, 2016, I held an evidentiary hearing on defendant's motion to suppress.  The government appeared by Assistant United States Attorney Jeffrey McCarther.  The defendant was present, represented by John Osgood.  The following witnesses testified:

2

1. Detective Vernon Huth, Kansas City, Missouri, Police Department

2. Detective Jason Cramblit, Kansas City, Missouri, Police Department[2]

3. Mark Douglas Reeder, private investigator

In addition, the following exhibits were admitted:

P. Ex. 1   Photograph of Chevrolet Cavalier with driver's door open (taken from the side)

P. Ex. 2   Photograph of Chevrolet Cavalier with driver's door open (taken from the rear)

P. Ex. 3   Photograph of Chevrolet Cavalier with driver's door open (taken from the front)

P. Ex. 4   Photograph of driver's seat/floor taken with driver's door shut

P. Ex. 5   Close-up photograph of floor of car showing gun partially visible from underneath driver's seat

P. Ex. 6   Photograph of firearm on floor of car after seat was pushed back to fully expose the firearm

P. Ex. 7   Photograph of firearm showing model and serial number

D. Ex. 500   Photograph of Cavalier parked in handicapped parking spot

D. Ex. 511   Photograph of car with door open showing only windshield and driver's door/rear view mirror

D. Ex. 524   CD with photographs

Defendant filed a supplemental motion to suppress on March 24, 2016 (document number 45), and the government filed supplemental suggestions in

---

[2]Defendant called Detective Cramblit as a witness; however, because he was on the front side of the apartment complex while the arrest was occurring at the back side of the complex, he did not witness anything related to this incident (Tr. at 50).

3

opposition on March 28, 2016 (document number 47). A transcript of the hearing was filed on March 30, 2016 (document number 48).

## II.    EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. Detective Vernon Huth has been a law enforcement officer for 24 years and is familiar with firearms including Taurus brand firearms (Tr. at 15, 33). He has seen firearms thousands of times during his career, including having seen them pulled from someone's waistband (Tr. at 15-16, 33).

2. On June 17, 2015, Detectives Huth and Horalek were at 9302 Bales after having been asked to assist in an investigative pickup for defendant issued by the Homicide Unit of the Kansas City Police Department (Tr. at 8, 24). The detectives were on surveillance at the apartment complex located at 9302 Bales because there was a vehicle parked outside that was associated with defendant (Tr. at 9). The vehicle was a blue Chevrolet Cavalier owned by defendant's girlfriend, and defendant had been known to drive that car or ride in it (Tr. at 9, 29-30). The detectives had arrived at that address at 7:00 a.m. (Tr. at 25).

3. At approximately 1:00 p.m., Detective Huth saw defendant in a breezeway between the apartments numbered 9302 and 9304 (Tr. at 9). From where defendant was located, he would need to walk down some steps to the parking lot to get to the car which was approximately 20 yards away (Tr. at 9-10, 36). The detectives saw defendant walk to the Cavalier (Tr. at 10). Defendant did not appear to be carrying anything, and he did not appear to have anything in his waistband (Tr. at 10, 17).

4

4. Detective Huth moved his unmarked police vehicle, a gold Dodge Durango, into a position almost directly behind the Cavalier so he could have a clear view of defendant and the driver's side of the Cavalier (Tr. at 10, 12-13). The Durango was almost up against the back bumper of the Cavalier (Tr. at 36). Defendant was at the driver's side of the Cavalier with the driver's door open when the Durango pulled up behind it; the detectives exited the Durango and began giving loud verbal commands, announcing their presence and telling defendant to get on the ground (Tr. at 11, 36). The detectives were wearing black vests with the word "POLICE" spelled out in large white lettering on the front and the back (Tr. at 11).

5. Defendant lifted his shirt and Detective Huth saw what he immediately recognized as the handle of a black firearm in defendant's hand (Tr. at 13, 14, 16). Detective Huth had a full and clear view of the front of defendant's body (Tr. at 13, 36). Detective Huth had his firearm drawn and raised, and he continued to yell to defendant to get on the ground, but defendant ignored the commands (Tr. at 13, 14). Detective Huth at that time feared for his life because he saw defendant with a firearm (Tr. at 44-45). Meanwhile Sergeant Mossbacher drove a marked Crown Victoria through some grass and onto the scene, and defendant looked over his shoulder toward that car (Tr. at 14-15). Defendant bent over, made a movement with his shoulders, and slammed the car door shut before running back toward the doorway of the apartment (Tr. at 13, 36). Detective Horalek and Sergeant Mossbacher chased defendant who continued to resist after being taken down (Tr. at 13, 19). Detective Huth ran up to assist and defendant was eventually taken into custody (Tr. at 13, 19). Defendant then said,

5

"What would you pussies do if my boys were standing up here shooting down at you?" (Tr. at 24).

6. Another officer who searched defendant incident to arrest removed a blue cellular telephone from defendant's pocket and handed it to Detective Huth who handed it to Detective Cannon, a homicide detective (Tr. at 19-20, 31, 33). Defendant did not have a firearm on his person when he was apprehended, and that occurred close to the apartment door, or about 20 yards from the Cavalier (Tr. at 20).

7. Detective Huth believed that defendant threw the gun in the Cavalier only because defendant saw the additional police officers coming (Tr. at 15, 19).

8. No one else had been in or near the Cavalier after defendant shut the door prior to Detective Huth returning to that car to see what had happened to the firearm he saw in defendant's hand (Tr. at 20). Detective Huth looked through the windshield and saw the end of what he immediately recognized as the handle of a firearm sticking out from the driver's seat (Tr. at 21, 22). Detective Huth's view of the firearm was better than at the angle depicted in P. Ex. 4 and P. Ex. 5 (Tr. at 22). Even if Detective Huth had not seen the firearm under the seat, he would have gone into the car to retrieve the firearm he had seen defendant throw inside (Tr. at 22, 46, 91). The firearm posed a threat due to others in the area including children, and it was evidence of a crime since it had been concealed before defendant threw it in the car (Tr. at 46).

9. The firearm was retrieved while defendant was in handcuffs but almost immediately after defendant had been subdued and taken into custody (Tr. at 47). After the firearm had been retrieved, Detective Huth called the Robbery Division and learned that defendant had felony convictions for assault and robbery (Tr. at 23-24, 45).

Those convictions were listed in the REJIS computer system which keeps track of criminal offenses (Tr. at 45). Possession of a firearm by a convicted felon is a federal crime (Tr. at 24).

  10. The following evidence was elicited through the testimony of private investigator Mark Reeder:

  a. A photograph taken with a digital camera is a JPEG file which contains data attached to the photograph including when it was taken (Tr. at 52). Hitting a properties button on the photo will reveal the date and time when the photograph was taken and when it was modified, such as if the photograph was uploaded to be printed (Tr. at 53). The photos are also time stamped (Tr. at 53). It is the understanding of private investigator Mark Reeder that the modified time in the metadata corresponds to the time the digital picture was copied from the digital camera to the computer (Tr. at 57). Mr. Reeder has never testified about metadata, and he has no special training or experience in this area (Tr. at 59).

  b. Mr. Reeder is not a qualified computer expert (Tr. at 81). He has no experience interpreting metadata, he can "read[] what's on the sheet right there." (Tr. at 81). He has no training in interpreting metadata (Tr. at 81). He does not have a degree in computer science (Tr. at 81). His experience with metadata comes from owning a digital camera (Tr. at 82). He is "self taught" in that "where you bring up the JPEG, you highlight it, you click on the properties, it brings you up the date stamps, the date time, when the picture was taken, as it's been displayed here." (Tr. at 82). He does not know whether date and time stamps on metadata are always 100% accurate, he assumes that is the case (Tr. at 82).

7

c. The U.S. Attorney emailed defense counsel the photographs which were downloaded from the email onto a disk (D. Ex. 524) (Tr. at 87).

d. In addition, Mr. Reeder conducted an experiment with a firearm which was not the same type of gun involved in this case or the same size gun; and he placed it under the seat of a Crown Victoria, not a Cavalier; the car was parked at a law office in Lee's Summit rather than at the scene of defendant's arrest; it was done at a different time of day from when defendant was arrested; and Mr. Reeder checked to see if he would be able to see the butt of the gun through the car window -- he could not (Tr. at 69-76, 82-86).

Detective Huth testified that P. Ex. 5 was taken before anyone touched the gun (Tr. at 90).

### III. METADATA

Defendant offered testimony of his private investigator who attempted to interpret metadata on photographs provided by the government in discovery. Mr. Reeder did not take the photographs, his role was limited to looking at the sheet of metadata provided by defense counsel who accessed the metadata from the discovery provided by the government. Mr. Reeder has no training in metadata or computer science, and his experience with metadata is limited to reading what was on the sheet showing metadata in this case, and accessing the properties of his own pictures as a user of digital cameras. The purpose of defendant's offering this evidence is to show that the photographs were not taken in the order offered by the government.

First, I find the entire argument irrelevant. The undisputed evidence is that the photographs of the gun in the car were taken before the gun was moved. It does not

8

matter in what order the government lists its exhibits or presents its exhibits.

Second, Mr. Reeder is not qualified to interpret the metadata and cannot testify that the time stamps on the sheets he reviewed prove that the photographs were taken at that time.

> Metadata is information about a particular data set which may describe, for example, how, when, and by whom it was received, created, accessed, and/or modified and how it is formatted. Some metadata, such as file dates and sizes, can easily be seen by users; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept.

In re Search of 3817 W. W. End, First Floor Chicago, Illinois 60621, 321 F. Supp. 2d 953, 956 (N.D. Ill. 2004).

Federal Rule of Evidence 701 provides that if a witness is not testifying as an expert, his testimony cannot be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Any testimony regarding the metadata underlying digital images should in most cases be proffered by a qualified expert. See, e.g., United States v. Brown, 579 F.3d 672, 684 n.5 (6th Cir. 2009) ("Testimony from qualified experts about the metadata underlying digital images could be helpful in ascertaining when photographs were taken and whether photographs were taken in sequence.").

> Plaintiff seeks to offer conclusions about metadata that are speculative, especially in light of the common understanding that "creation dates" in metadata may be altered by copying a document or moving it to a new location (e.g., "save as" function on a word processor). See, e.g., Florida Bar v. MacNamara, 132 So.3d 165, 170 (Fla.2013) ("[M]etadata can be misleading because if someone moves a file or copies a file to another folder, or in some situations, when someone resaves the file, the creation date will change."). Without more information from a computer forensics expert, Plaintiff has not adequately refuted this common understanding of how metadata works.

Pearson v. U.S. Bank Nat. Ass'n, 2014 WL 4163020, at *17 (D. Minn. Aug. 21, 2014).

9

See also Deal v. United States, 2015 WL 1909757, at *5 (M.D. Fla. Apr. 24, 2015) (computer forensics expert should testify about metadata rather than a lay witness).

Reading from the sheet provided by defense counsel does not establish that Mr. Reeder understood what he was testifying to or that he had any knowledge of whether the numbers on that sheet were accurate. In fact, when I put the defendant's disk in my computer, the time shown on the properties of each picture included only the hour and minute, not the second that the picture was taken. However, when I copied those pictures from the disk to my own computer, the properties did include the seconds but the times did not correspond to the times testified to by Mr. Reeder. For every picture, the time on the properties was one hour off from the time testified to by Mr. Reeder. As a result, I conclude that expert testimony would be required before any of this evidence could be relied on by the court, in the event such evidence were relevant.

## IV.  DEFENDANT'S EXPERIMENT

On the morning of the March 23, 2016, suppression hearing, defense counsel and his investigator conducted an experiment by placing a .380 caliber Walther PPK handgun underneath the driver's seat of a 2011 Ford Crown Victoria which was parked at a law office in Lee's Summit, Missouri, to see whether it was reasonable that detectives could have seen a .40 Taurus G2C handgun underneath the driver's seat of a 2004 Chevrolet Cavalier parked at an apartment complex in Kansas City in the afternoon of June 17, 2015. None of the elements of the experiment matched the elements of the actual event. The gun was not the same model or the same size, the floor of the car was not the same, the driver's seat was not the same, the location of the vehicle was not the same, the time of year was not the same, the time of day was not

10

the same, the weather may not have been the same, the height of the person peering into the window of the car may not have been the same, etc. Because nothing in the experiment was the same as the incident it was intended to duplicate, I find no reliability whatsoever in this attempt to reconstruct the incident that occurred on June 17, 2015.

I further find that, as discussed below, because the detective saw defendant throw a gun into the car, he was entitled to search the car to retrieve the gun regardless of whether it could be seen underneath the driver's seat from outside the car.

Finally, Detective Huth testified that he could see the gun sticking out from underneath the driver's seat before he entered the car. There is no evidence that the gun was completely hidden from view, Mr. Reeder was not at the scene at the time of the search, and therefore his experiment is wholly irrelevant.

## V. SEIZURE OF THE FIREARM

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrant signed by a judge ensures that a search is reasonable. Maryland v. Dyson, 527 U.S. 465, 466 (1999). The Supreme Court has outlined multiple exceptions to the warrant requirement, one being the automobile exception. In Carroll v. United States, 267 U.S. 132, 153 (1925), the Supreme Court noted the practical challenges of obtaining a warrant for a vehicle that could be "quickly moved" out of the jurisdiction. In South Dakota v. Opperman, 428 U.S. 364, 367 (1976), the Court noted that the expectation of privacy with respect to an automobile is significantly less than that relating to a home or office, an additional justification for the automobile exception. This reduced expectation in privacy is based, in part, on the relative openness of a car's

11

passenger compartment, Cardwell v. Lewis, 417 U.S. 583, 590 (1974), but the Court has also applied the exception to searches of car trunks, Cady v. Dombrowski, 413 U.S. 433, 446 (1973), and other closed compartments, Chambers v. Maroney, 399 U.S. 42, 44 (1970), reasoning that the reduced expectation of privacy is also based upon "the pervasive regulation of vehicles capable of traveling on the public highways." California v. Carney, 471 U.S. 386, 392 (1985). Therefore, so long as police have probable cause to search an automobile for contraband or evidence of illegal activity and the automobile is "readily mobile," no warrant is required. California v. Carney, 471 U.S. at 392; Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). See also United States v. Blaylock, 535 F.3d 922, 927 (8th Cir. 2008); United States v. Castaneda, 438 F.3d 891, 893 (8th Cir. 2006).

**Readily Mobile**

The undisputed testimony establishes that defendant had either ridden in or driven the car which belonged to his girlfriend. Furthermore, in his motion to suppress, defendant admits in his motion that he "had full access to his girlfriend's car and used it regularly. This was a fact know to the officers and he had indeed been ticketed while driving the vehicle." Defendant had approached the vehicle and opened the door, and in his motion he admits that he "was one of the two drivers who regularly drove the car." His argument is that because the car was parked and defendant had run away from the car, it was "not mobile within the meaning of the Carroll/Chambers exception." Not surprisingly, defendant cites no case law to support this argument; and I find that it is completely contrary to well established law.

12

The Supreme Court in California v. Carney, 471 U.S. 386 (1985), observed that:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationery . . . -- temporarily or otherwise -- the two justifications for the vehicle exception come into play. *First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving.* Second, there is a reduced expectation of privacy. . . .

Id. at 392-393 (emphasis added).

The court in United States v. Barraza, 2005 WL 1364901 (N.D. Iowa, June 8, 2005), was faced with the same question.

> The question that remains is whether the automobile exception to the Fourth Amendment warrant requirement applies to a vehicle parked on private property. The Supreme Court answered this question in Pennsylvania v. Labron, 518 U.S. 938 (1996), where the Court overruled two lower court rulings that the automobile exception required both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search. The Supreme Court held the automobile exception no longer depended on exigency, as was the case when the doctrine first was established. Rather, the automobile exception now would be justified on two distinct grounds: (1) the ready mobility of automobiles, and (2) the reduced expectation of privacy in automobiles. Labron, 518 U.S. at 940.

In fact, in Pennsylvania v. Labron, 518 U.S. 938 (1996), the car at issue was parked, just as in this case. Defendant's reading of the automobile exception depends on the requirement being a "mobile" vehicle when in fact the requirement is that the vehicle be "readily mobile." The "capacity to be quickly moved" was the basis of the holding in Carroll. California v. Carney, 471 U.S. 386, 390-391 (1985). If a vehicle is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more. Pennsylvania v. Labron, 518 U.S. at 940. See also United States v. Cowan, 674 F.3d 947, 956-957 (8th Cir. 2012) (automobile exception applied despite officer having to use key fob to locate car parked in parking lot after suspect claimed he had arrived by bus); United States v.

13

Harris, 2011 WL 2261302 (D. Minn., April 8, 2011) (automobile exception applies to parked car); United States v. Brown, 2009 WL 2982934 (D. Minn., September 14, 2009) (rejecting argument that vehicle parked at a residence is not "readily mobile," citing Pennsylvania v. Labron, 518 U.S. at 940); United States v. Aguilar-Barraza, 2005 WL 2007874 (N.D. Iowa, August 22, 2005) (truck which was stationary and in a parking stall is "readily mobile" within the meaning of Pennsylvania v. Labron, 518 U.S. at 940).

In this case I find that the Cavalier was "readily mobile."

**Probable Cause**

Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Grooms, 602 F.3d 939, 942 (8th Cir. 2010). In Grooms, the court of appeals held that police had probable cause to search Grooms's truck after he told a bouncer he was going to his truck to get a gun to use on the bouncer. The court reasoned that the presence of a gun in Grooms's truck would be evidence of a crime, i.e., threatening to commit murder. Id.

In United States v. Martin, 806 F.2d 204 (8th Cir. 1986), the court of appeals held that police had probable cause to search a vehicle for machine gun parts after an officer saw a plastic bag containing gun parts which, as a result of his extensive training, he immediately recognized to be the receiver of a Mach-Ten type weapon and a receiver of a British Sten machine gun. The owner of the truck was suspected of engaging in an unlicensed gun business and therefore the parts observed by the officer in the suspect's truck would constitute evidence of a crime.

14

In United States v. Hodges, 453 F. App'x 659, 660, 2011 WL 6268209 (8th Cir. 2011), a police officer, at approximately 9:30 p.m., approached a vehicle after hearing loud music. The officer observed Hodges, the sole occupant of a vehicle, seated in the front passenger seat with the door partially open and his right foot on the ground. As Officer Gann approached, Hodges pulled his foot into the vehicle and shut the door. Officer Gann saw Hodges make "furtive movements" and instructed Hodges to place his hands on the dashboard. Hodges stated that he was not the owner of the vehicle. While waiting for dispatch to report back to him on whether Hodges had any outstanding warrants, Officer Gann shined his flashlight into the vehicle from different angles and eventually saw underneath Hodges's seat a shiny, black metal object that he believed to be a semiautomatic handgun. Officer Gann immediately drew his firearm, ordered Hodges out of the vehicle, and arrested him. A subsequent search of the vehicle confirmed that the object Gann observed was a firearm.

> Upon seeing the firearm . . . Officer Gann was permitted to enter the vehicle under the "so-called automobile exception to the warrant requirement," which allows officers to "conduct a warrantless search of a vehicle . . . whenever probable cause exists." United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1998). Officer Gann had probable cause to believe that Hodges possessed the firearm in violation of Iowa law. See Iowa Code § 724.4(1) (2011) (prohibiting, with certain exceptions, knowingly carrying or transporting a pistol in a vehicle); United States v. Brown, 217 F.3d 605, 607 (8th Cir. 2000). Finally, Hodges contends that the firearm was not in "plain view" because it was dark and Officer Gann had to use a flashlight to discover the weapon. An object can be in plain view, however, even when a flashlight is required to see the object. United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995). Although Hodges argues that Hatten is distinguishable based on a difference in how long the flashlight was used, he cites no authority to support his position, and we reject his argument.

United States v. Hodges, 453 F. App'x 659, 662, 2011 WL 6268209 (8th Cir. 2011).

Here the undisputed evidence is that Detective Huth saw defendant pull something from his waistband underneath his shirt. Detective Huth testified that he immediately recognized the object as a firearm. He saw defendant toss the object into the car and shut the door before fleeing on foot. He saw the object partially protruding from underneath the driver's seat of the car, he was able to see the object from outside the vehicle, and he immediately recognized the object as a firearm. He also testified that his view of the gun under the seat was better than that displayed in the photographs. Although defendant attempted to challenge the photographs based on what order they were taken, none of that contradicts the detective's testimony that he saw defendant pull a firearm from underneath his shirt and inside his waistband and throw that firearm in the car.

It is a crime in Missouri (and was on June 17, 2015), to conceal a firearm upon or about one's person. Mo. Ann. Stat. § 571.030 (West). Therefore, because Detective Huth saw defendant throw a firearm, which had been concealed on defendant's person, into the car, there was probable cause to believe that evidence of a crime would be found in that car. As such, the automobile exception to the search warrant requirement applies.

## VI. CONCLUSION

Based on all of the above, I find that the warrantless search of the car was lawful pursuant to the automobile exception. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections. Those objections are due by 10:00 a.m., April 22, 2016.

          /s/ Robert E. Larsen
          ROBERT E. LARSEN
          United States Magistrate Judge

Kansas City, Missouri
April 8, 2016